# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ) | |
| PAUL R. CROFT, ) | |
| ) | Civil Action No. 04-11487-RWZ |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| NATIONAL BEDDING COMPANY *D/B/A* ) | |
| SERTA MATTRESS COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
Daniel B. Klein, Esquire
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210
617-946-4800

Counsel for the Defendant
National Bedding Company d/b/a Serta
Mattress Company

# INTRODUCTION[1]

The Plaintiff, Paul Croft ("Croft" or "Plaintiff"), a former executive of the Defendant, National Bedding Company *d/b/a* Serta Mattress Company ("Serta," "Defendant" or the "Company"), asserts claims against Serta for breach of contract, promissory estoppel and declaratory judgment, arising from a purported oral modification of his written Employment Agreement with Serta.[2]  The *material* facts in this case are straightforward and undisputed.  Even assuming Plaintiff's factual allegations as true, his claims fail as a matter of law.

Plaintiff's contract claim fails for several independent reasons under well-established principles of Massachusetts contract law.  None of Serta's defenses relies upon any fact in dispute.  First, through a letter from Croft's counsel dated December 20, 2000, Croft provided Serta six months written notice of his termination of his Employment Agreement (the "Agreement") pursuant to its termination provision.  Despite this termination notice, Croft alleges that the parties, thereafter, orally modified the Agreement on February 5, 2001, thereby guaranteeing him employment through December 31, 2004 and substantially changing material terms of the Agreement.  Even assuming Croft's admissible evidence as true, however, the parties could not modify the Agreement because Croft terminated it on December 20, 2000.  Rather, any negotiations concerned a "new agreement."  Because any purported new agreement was oral, such agreement was unenforceable under the Statute of Frauds because it was not in writing and signed by Serta.

Moreover, even if the parties could modify the Agreement, it is well established that a plaintiff cannot bring an action upon an oral modification, even in part, where the written

---

[1] Defendant incorporates herein the facts contained in its Statement of Undisputed Material Facts, submitted herewith.

[2] Paragraph 31 of Plaintiff's Complaint is now moot because Serta has since paid Croft in full for any of his inadvertently unpaid business expenses.

contract falls within the Statute of Frauds. The Statute of Frauds, therefore, bars any action based, in whole or in part, upon Serta's purported breach of the oral modification. Defendant anticipates that Plaintiff will contend that the *Cummings* rule or its exceptions, discussed *infra*, rendered the alleged oral modification exempt from the Statute of Frauds. On the contrary, the *Cummings* rule and its exceptions are inapplicable here because Croft brought this action upon the alleged oral modification. Likewise, to the extent that Croft contends that equitable estoppel precludes Serta's Statute of Frauds defense, Croft cannot establish equitable estoppel because he undisputedly suffered no actual *detriment* as a result of any purported reliance on any representation or conduct by Serta. Accordingly, Croft's contract claim fails as a matter of law. Further, Serta did not breach the unambiguous terms of the Agreement, even if modified, concerning any post-termination continued salary and bonus payment obligations.

Croft's promissory estoppel claim also fails because he suffered no actual detriment as a result of any purported reliance on any representation or conduct by Serta. Because Croft is not entitled to any damages on his contract and promissory estoppel claims, Croft's declaratory judgment claim likewise fails.

Accordingly, the Court should dismiss Croft's claims in their entirety.

## ARGUMENT

## I.    THE STATUTE OF FRAUDS BARS CROFT'S CONTRACT CLAIM.

The Statute of Frauds, M.G.L. ch. 259, § 1 (the "Statute"), bars Croft's contract claim regardless of whether the alleged agreement on February 5, 2001 amounted to a new oral agreement or an oral modification of the original written Agreement.

### A.    CROFT TERMINATED THE AGREEMENT ON DECEMBER 20, 2000, AND ANY SUBSEQUENT ORAL AGREEMENT CONSTITUTED A NEW CONTRACT IN VIOLATION OF THE STATUTE OF FRAUDS.

1.    Croft Terminated The Agreement On December 20, 2000, And Any Subsequent Agreement Constituted A New Oral Contract.

On December 20, 2000, counsel for Croft, Reardon and Toman (the "Executives"), sent Serta's counsel a letter on behalf of the three Executives, stating that:

> Under the terms of paragraph twelve of the Agreements, the Executives may terminate their employment with the Company effective after the Designated Term (i.e., June 22, 2001) *upon giving written notice* to the Company six months prior to the end of the Designated Terms (i.e., December 21, 2000). *In accordance with these terms, consider this letter notice* to the Company that Messrs. Toman, Reardon, and Croft intend to terminate their employment effective June 22, 2001.

*See* Dec. 20, 2000 Letter, attached to Defendant's Statement of Facts ("Facts") as Exhibit B (the "December 20 letter") (emphasis added). The Executives' letter further stated, "Although ***this letter gives timely notice of intention to terminate pursuant to the provisions of the Agreement***, Messrs. Toman, Reardon, and Croft are willing to discuss and negotiate the terms of ***a new Agreement***…" Ex. B (emphasis added). The three Executives thereby sought a "new Agreement" with material changes. *Id.*

The letter clearly provided termination notice pursuant to the Agreement, effective on June 22, 2001. *See Fenoglio v. Augat, Inc.*, 50 F. Supp.2d 46, 52-53 (D.Mass. 1999) (effective date of termination six months after letter that stated "quite clearly" that it was written notice of termination of employment agreement).[3] Croft's and his counsel's intent in sending this letter or interpretation of this letter are inadmissible pursuant to the parol evidence rule. *See Barletta v. Ogden Martin Sys. Of Haverhill, Inc.*, 51 Mass. App. Ct. 1101, 2001 WL 128582, at ***1

---

[3] Croft's theory that the letter served merely as a notice of his intention to terminate, rather than a termination notice itself, is preposterous, especially in light of the letter's unambiguous language "in accordance with these terms" and "consider this letter notice." *See* Ex. B. Indeed, Paragraph 12 of the Agreement provided that Croft could terminate his employment "***upon giving written notice*** to the Company six months' prior to the end of the Designated Term…" *See* Employment Agreement, attached to Facts as Exhibit A (emphasis added). To provide such notice "in accordance with these terms," as Croft did, but not thereby terminate employment, effective June 22, 2001, would render this provision meaningless. If the December 20 letter was not a "notice of termination," query how Croft could ever effect his termination pursuant to Paragraph 12 with any notice.

(App.Ct. 2001) (unambiguous release letter could not be made ambiguous by parol evidence) (copy attached).  Accordingly, no genuine issue of fact exists concerning whether the December 20 letter constituted Croft's "notice of termination" under the Agreement.  *See Allstate Insur. Co. v. Bearce*, 412 Mass. 442, 446-47 (1992) (interpretation of a contract is ordinarily a question of law for the court); *Coll v. PB Diagnostic Sys., Inc.*, 50 F.3d 1115, 1122 (1st Cir. 1995) (same).[4]

In the December 20 letter, pursuant to Paragraph 12 of the Agreement, Croft provided Serta six months written notice of his termination of his employment under the Agreement, effective at the end of the Designated Term on June 22, 2001.  In this letter, Croft conceded that he desired to "negotiate the terms of a *new* agreement."  Ex. B (emphasis added).  In accordance with the December 20 letter, Croft and Serta thereafter attempted to negotiate the terms of a *new* agreement in January and February 2001.  The parties could not modify the original Agreement at that point because there was no surviving Agreement to modify once Croft terminated the Agreement on December 20.  Accordingly, any negotiations between Croft and Serta after December 20 concerned an entirely *new* contract.

2.    The Purported New Oral Contract Violated The Statute Of Frauds.

Even as alleged, to the extent that the parties reached a meeting of the minds on February 5, 2001, any such agreement constituted a new oral contract.  This new oral contract of employment was for more than one year because it purportedly guaranteed employment through December 31, 2004.  Croft Tr. 188-89.  Accordingly, this purported agreement was subject to the Statute of Frauds as a contract that was "not to be performed within one year from the making

---

[4] The issue of whether the December 20 letter terminated the Agreement is only material to Serta's first argument for dismissal (*i.e.*, that the parties could not modify the Agreement, and any new purported oral agreement was unenforceable under the Statute of Frauds).  It is immaterial to any of Serta's other independent grounds for dismissal.  Therefore, even if the Court determines that an issue of fact exists concerning whether this letter terminated the Agreement, it does not create an issue of *material* fact, ultimately, and the Court may dismiss the case on Serta's alternative grounds.  Notwithstanding, such interpretation is a question of law for the Court.

thereof." M.G.L. ch. 259, § 1; *see Irving v. Goodimate Co.*, 320 Mass. 454, 458 (1946)

(employment contract for more than a year unenforceable unless satisfied the Statute). The

purported agreement, thus, had to be evidenced by a writing "signed by the party to be charged

therewith." *See id.* To satisfy the Statute's requirement of a writing, a memorandum need not be

a formal document intended to serve as a memorandum of the contract; but, it must contain, at a

minimum, the essential terms and conditions of the contract agreed upon and identify the parties

to that agreement. *Des Brisay v. Foss*, 264 Mass. 102, 109-10 (1928).

　　The February 5 fax clearly fails to meet the requirements of the Statute. First, the

February 5 fax does not satisfy the Statute because it undisputedly was not signed by Robert

Sherman or any agent of Serta. *See Goodimate*, 320 Mass. at 459 ("A memorandum is signed in

accordance with the [S]tatute of [F]rauds if it is signed by the person to be charged, in his own

name, or by his initials, or by his Christian name alone, or by a printed, stamped or typewritten

signature, if in signing in any of these methods he intended to authenticate the paper as his act.").

　　The February 5 fax further violates the Statute because it does not state all of the essential

terms and conditions of the purported bargain, and it fails to describe the parties. *See Des

Brisay*, 264 Mass. at 109-10 (memorandum must contain terms of contract and describe the

parties to satisfy Statute); *Young v. Young*, 251 Mass. 218, 221 (1925) ("memorandum must, by

its own terms, or by reference to some other writing, express with reasonable certainty all of the

essential elements and conditions of the agreement"); *Webster v. Condon*, 248 Mass. 269, 271

(1924) (memorandum must state all essential terms of agreement). The February 5 fax also does

not expressly incorporate by reference or refer to the original Agreement. In fact, the few

purported terms contained in the February 5 fax are not sufficiently clear or defined. *Id.*

　　Accordingly, the February 5 fax failed to satisfy the Statute's requirements, and the

Statute bars any claim by Croft upon any new purported oral contract.  *Id.*

**B.    EVEN IF THE PARTIES COULD MODIFY THE AGREEMENT, THE STATUTE BARS CROFT'S ACTION ON SUCH ORAL MODIFICATION.**

Even assuming, *arguendo*, that the parties could modify the Agreement despite the December 20, 2000 termination notice, "'[t]he general rule [in Massachusetts] is that an oral modification… of a written contract which originally was and as modified is within the [S]tatute of [F]rauds cannot be wholly or in part the *foundation of an action*.'"  *Johnston v. Holiday Inns, Inc.,* 565 F.2d 790, 793 (1st Cir.1977) (quoting *Lampasona v. Capriotti,* 296 Mass. 34, 38 (1936)).  In other words, a plaintiff cannot bring an action upon an oral modification, even in part, where the original written contract, as modified, falls within the Statute.  Because the Statute applies to the purported oral modification, the Statute bars Croft's action based on the Agreement, as modified.  *See id.*

1.    The Allegedly Modified Agreement Falls Within The Statute Of Frauds.

The Agreement, as allegedly modified, falls within the Statute because it could not be performed within one year of February 2001.  *See Goodimate*, 320 Mass. at 458; M.G.L. ch. 259, § 1.  Accordingly, the Statute required the contract to "be evidenced by a writing 'signed by the party to be charged therewith.'"  *Johnston*, 565 F.2d at 793 (quoting M.G.L. ch. 259, § 1).

It is undisputed that Serta never signed a written modification of the Agreement in 2001.  Further, as discussed, *supra*, the February 5 fax does not constitute a signed writing under the Statute.  *See Des Brisay*, 264 Mass. at 109-10.  The purported modification, therefore, must be deemed an *oral* modification, as Croft concedes.  *See Johnston,* 565 F.2d at 793 (letter incorporating modification deemed *oral* modification because not signed by party obligor); *Lampasona*, 296 Mass. at 36 (modification deemed *oral* because memorandum containing modification was signed by only one of contracting parties).

6

Because the purported oral modification fails to meet the Statute's requirements, the Statute prohibits the oral modification from being "wholly or in part the foundation of an action." *See Johnston*, 565 F.2d at 793; *Rosenfeld v. Standard Bottling & Extracts Co.*, 232 Mass. 239, 245 (1919) ("to allow a party to sue partly on a written and partly on an oral agreement would be in direct contravention of the [S]tatute") (citing *Cummings v. Arnold*, 44 Mass. (3 Met.) 486, 491-92 (1842)); *Whittier v. Dana*, 92 Mass. 326, 327-28 (1865) (if jury found an oral agreement for an extension of a written contract, the plaintiff could not recover upon such oral agreement because not in writing).

2.    The *Cummings* Rule And Its Exceptions.

Although not articulated in any pleadings to date, Serta anticipates that Plaintiff will argue that the "*Cummings* rule" and its progeny allow Croft to sidestep the general rule, identified above, and bring an action upon the purported oral modification. While the *Cummings* rule provides one exception to the general rule, it draws a formal distinction between affirmative and defensive use of an oral modification to a contract within the Statute. *See Johnston*, 565 F.2d at 794. The *Cummings* rule and its exceptions, therefore, are inapplicable to the instant matter, and they do not permit Croft to bring an action upon the oral modification.

In *Johnston v. Holiday Inns, Inc.*, the First Circuit described the *Cummings* rule as "a doctrine accepted in Massachusetts under which 'in *defence* to an action on the written contract [within the Statute of Frauds], the *defendant* may show that he has performed it according to an oral agreement for a substituted performance.'"[5] 565 F.2d at 795 (quoting *Rosenfeld,* 232 Mass.

---

[5] In *Cummings v. Arnold*, the Court noted that while the Statute of Frauds requires a writing to provide certainty, it does not undertake to regulate a contract's performance. 44 Mass. (3 Met.) 486, 491-92 (1842). Thus, the Statute "does not say that such a contract shall not be varied by a subsequent oral agreement for a substituted performance." *Johnston*, 565 F.2d at 794 (quoting *Cummings*, 44 Mass. at 491). Accordingly, parties may orally modify a contract within the Statute with a substituted performance. However, although an oral modification for a substituted performance is permissible, a party cannot bring an *action* upon the oral modification because the Statute strictly prohibits any action upon such oral agreement, in whole or in part. *See id.*, at 793; *Cummings*, 44 Mass. at 491-92.

at 245) (emphasis added)).  In *Johnston*, the First Circuit further explained the *Cummings* rule as one under which "a plaintiff could not sue upon the oral modification," but "a defendant was entitled to set it up as a defense."  *Id.*, at 794.  "In other words, the rule 'relies on the distinction between a plaintiff's cause of action on a parol modification [which is prohibited] and a defendant's reliance on such a modification [which is not].'"  *Lydon v. Nationwide Mut. Ins. Co.*, No. 91-11971-NG, 1997 WL 260064, at *8 (D.Mass. 1997) (quoting *Johnston*, 565 F.2d at 794) (copy attached).

In *Stearns v. Hall*, the Court recognized a narrow equitable exception to the *Cummings* rule's limitation that oral modifications to contracts within the Statute may be used only as shields, not as swords.  63 Mass. 31, 34-36 (1851); *see Rex Lumber Co. v. Acton Block Co.*, 29 Mass. App. Ct. 510, 515 (App.Ct. 1990); *see also Lydon*, 1997 WL 260064, at *8 (discussing *Cummings*, *Stearns* and their progeny).  According to *Stearns*, where a plaintiff attempts to sue on a written contract within the Statute and is met with the defense that the defendant's obligation was discharged by the plaintiff's own failure to perform within the written contract's time requirements, the plaintiff may prove that the parties extended the plaintiff's time for performance by an oral modification.  *See Stearns*, 63 Mass. at 34-36 (plaintiff would have paid the money within the time required by the written contract if the defendant had not orally agreed to substitute another time).  While this exception initially addressed oral modifications to the *time for performance*, the courts have since extended this exception to oral modification to the

---

The *Cummings* Court concluded that while a plaintiff could not sue upon the oral modification, nothing barred a defendant from setting it up as a defense to the defendant's breach of the original written contract (*i.e.*, that the defendant did not perform in accordance with the written contract because he instead performed, or planned to perform, in accordance with the subsequent oral agreement).  *Id.*  The Court reasoned that the Statute does not require that all contracts within the Statute "be in writing; all it enacts is, that no action shall be brought unless they are in writing; and there is no clause which requires the dissolution of such contracts to be in writing."  *Cummings*, 44 Mass. at 493 (internal quotation omitted).  Accordingly, the *Cummings* rule "prevents a writing from being used to hold a party to *more* than the final agreement," while not conflicting with the Statute's prohibition against any *action* upon an oral agreement.  *Johnston*, 565 F.2d at 794 (emphasis added).

8

*mode of performance* as well.  *See McKinley Investments, Inc. v. Middleborough Land, LLC*, 62

Mass. App. Ct. 616, 619-21 (App.Ct. 2004).[6]  **However, while this limited exception allows a**

**plaintiff in an action on the written contract to affirmatively prove an oral modification (as to**

**timing and mode of performance) in order to rebut a defense that the plaintiff failed to**

**perform under the written contract, a plaintiff still may not bring an action upon the oral**

**modification.**  *See Whittier*, 92 Mass. at 327-28 (prohibiting plaintiff from bringing action upon

the orally modified extension of the contract time); *see also Rex Lumber*, 29 Mass. App. Ct. at

515 n.5 (distinguishing *Stearns* exception from suit upon the oral modification in *Whittier*).

        In *Johnston*, the First Circuit analyzed *Cummings*, *Stearns* and their progeny and created

a test to clarify when the *Cummings* rule or its exceptions are available to a party.[7]  565 F.2d at

795-96.  According to the *Johnston* test, a court must determine whether the oral modification

amounted to a mere "substituted performance" or whether the modification's changes were so

extensive and significant that it essentially created a new contract (*i.e.*, a "substituted contract").

*Id.*  If the oral modification merely substituted performance, as required by the *Cummings* rule,

then the party could prove the oral modification without a writing, and the party could perform in

accordance with it rather than in accordance with the original written contract.  As a result, a

---

[6] In *McKinley Investments, Inc. v. Middleborough Land, LLC*, the Appeals Court recently confirmed the expansion of the *Stearns* exception from applying merely to oral modifications of the *time for performance*, to oral modifications of the *mode of performance*. 62 Mass. App. Ct. 616, 619-21 (App.Ct. 2004) (oral modifications as to the timing and mode of plaintiff's performance permitted plaintiff to enforce oral modifications in order to bring its claim for defendant's failure to perform under the original written contract).

[7] The *Johnston* Court analyzed *Rosenfeld v. Standard Bottling & Extracts Co.*, in which a salesman sued his employer "on the original [written] contract" and attempted to enforce an oral modification under the *Stearns* exception. 232 Mass. 239, 243-45 (1919).  In *Rosenfeld*, the plaintiff attempted to show that several of his performance obligations were waived by the oral modification, while other terms of the original agreement remained in place, and that the parties extended the original contract by five years.  *Id.*  The Court found that the oral modification so differed from the original contract that, in essence, it was a "substituted contract" rather than a "substituted performance."  *Id.*  Because the modification created a substituted contract rather than a substituted performance, the Court reasoned, neither *Cummings* nor *Stearns* applied to enable the plaintiff to prove the oral modification.  *Id.*; *see Johnston*, 565 F.2d at 795 (discussing *Rosenfeld*).  Indeed, even if *Cummings* or *Stearns* applied to the oral modification in *Rosenfeld*, the plaintiff still could not bring an action upon the oral modification itself.  *See id.*

party's "substituted performance" (*i.e.*, performance of the orally modified term) provided the party a defense for its nonperformance under the original written contract. On the other hand, the Court held, if the oral modification was so extensive and significant that it created a new contract, then "that new contract must be proved by a writing" and would not be enforceable under the Statute of Frauds. *Id.*, at 796.

However, while *Johnston* created a test to determine when an oral modification can be proven, it did so only within the confines of the *Cummings* rule and its limited exceptions. That is, the Court did not expand the application of the *Cummings* rule to allow a party to bring an action upon an oral modification. *See Johnston*, 565 F.2d at 794-96 (reiterating that the only exception that allowed for a plaintiff's *offensive* use was in the limited equitable circumstances of *Stearns*, where in an action upon the written contract, defendant's act caused plaintiff's nonperformance under the original written contract). The *Cummings* rule and its exceptions have not changed the fundamental principle that "[n]o one can be held responsible for a contract within the Statute that is not in writing." *Id*. As a result, "a party may not be made to comply with the terms of the amended contract unless he has signed a memorandum sufficiently indicating his assent thereto." *Rex Lumber*, 29 Mass. App. Ct. at 515.

> 3. <u>The *Cummings* Rule And Its Exceptions Are Inapplicable To Croft's Alleged Oral Modification.</u>

The *Cummings* rule, itself, is inapplicable to the instant matter because Croft is the plaintiff, not the defendant, in this action. *See Johnston*, 565 F.2d at 793-94. Croft is <u>not</u> seeking to enforce the oral modification in **defense** to an action on the written Agreement. *See id*. Rather, he is seeking to **affirmatively** bring a claim on the oral modification, which neither the Statute nor the *Cummings* rule permits. *See id*.; *Rex Lumber*, 29 Mass. App. Ct. at 515 n.5. Croft's claim resembles that in *Whittier v. Dana*, in which the plaintiffs alleged that the parties

orally agreed to extend the original written contract, thereby delaying the date for defendant's delivery of bricks. 92 Mass. 326, 327-28 (1865). When the defendants failed to perform on the orally agreed new date, the plaintiffs sued for breach. Relying on *Cummings*, the *Whittier* Court held that plaintiffs could not bring an action for breach of the orally modified agreement; they could only bring an action on the original written contract. *Id.; see also Johnston*, 565 F.2d at 795 (analyzing *Whittier* and stating that although the plaintiffs could not rely on the oral modification under the *Cummings* rule, the *defendants*, had they performed the substituted performance, could have raised it as a defense). Like *Whittier*, Croft brings this action for a "breach of the new agreement," alleging that the parties orally extended the Agreement and modified other substantial terms. *See* 92 Mass. at 327-28. Therefore, like *Whittier*, the *Cummings* rule does not apply to Croft's action upon the oral Agreement. *See id.*[8]

Likewise, the *Stearns* exception and *McKinley's* expansion of this exception are inapplicable here because Croft is <u>not</u> seeking to prove the oral modification to rebut any defense that he failed to perform under the written Agreement. *See Stearns*, 63 Mass. at 34-36; *McKinley*, 62 Mass. App. Ct. at 619-21. Indeed, Croft's performance under the original Agreement is not at issue. Moreover, *Stearns* and *McKinley* are distinguishable from the instant case because while the modifications sought to be enforced in those cases altered the *plaintiffs'*

_____

[8] Further, under the *Johnston* test, the purported modification in the instant matter was so extensive and significant as to amount to a substituted contract. Indeed, Croft conceded at the time, as he does now, that the purported modification altered "material terms of the Original Agreement" rather than merely the timing or mode of performance. Ex. I, April 23, 2004 letter; Ex. B, Dec. 20, 2000 letter; Ex. H, Plaintiff's Response to Interrogatories, at No. 4; Croft Tr. 201, 304-05. As alleged, the parties modified the most important terms of the Agreement, creating: (i) an entirely new term guaranteeing Croft's employment for almost four additional years through December 31, 2004; (ii) a mandatory annual salary increase by a set percentage, whereas the original Agreement left salary increases, if any, to Serta's discretion; and (iii) an entirely new bonus program different from the other executives and managers, whereas the original Agreement did not even require any bonus. Without these material terms, there would be no significant terms of Serta's performance left to the original Agreement. Like the contract in *Rosenfeld*, *supra*, note 7, Croft sought to modify the entire basis for his compensation, creating minimum salary increases and an entirely new bonus program. Likewise, in an almost identical fashion to the changes in *Rosenfeld*, Croft sought to replace the two-year Designated Term with potential one-year renewal periods to a fixed, guaranteed term of employment for almost four years. Accordingly, the alleged oral modification amounted to a substituted contract.

performance obligations, the oral modification Croft seeks to enforce altered *Defendant's* performance obligations. *See Stearns*, 63 Mass. at 34-36 (modified time for plaintiff land buyer's performance, or payment); *McKinley*, 62 Mass. App. Ct. at 619-21 (modified time and mode of plaintiff land buyer's performance obligations, including time for payment, tolling of deposit deadlines and price). Consequently, while the *Stearns* and *McKinley* plaintiffs respectively brought actions upon the *original contracts* for each seller defendant's failure to perform thereunder (*i.e.*, convey the land), Croft brings this action upon *the oral modification* for Serta's alleged failure to perform its obligations thereunder.[9]  *Id.*  Nothing in *Stearns*, *McKinley*[10] or any of the post-*Cummings* cases permits Croft to bring an action to enforce Serta's purported obligations under the alleged oral modification. *Id.*  Indeed, the Statute of Frauds, *Johnston* and the other post-*Cummings* cases expressly prohibit such an action. *See Johnston*, 565 F.2d at 793-94*; Whittier*, 92 Mass. at 327-28; *Rex Lumber*, 29 Mass. App. Ct. at 515 n.*5*.

        In sum, the *Cummings* rule and its exceptions are inapplicable to Croft's action. As a result, the Statute of Frauds bars Croft's action upon the oral modification.

### C.    EQUITABLE ESTOPPEL CANNOT PRECLUDE THE STATUTE OF FRAUDS DEFENSE BECAUSE CROFT SUFFERED NO DETRIMENT.

        Defendant also anticipates that Plaintiff may argue that equitable estoppel precludes Serta's Statute of Frauds defense. Under limited circumstances, if a party against whom enforcement of an oral contract is sought has made a material misrepresentation, the party may

---

[9] In both *Stearns* and *McKinley*, the plaintiff buyers were suing the defendant sellers under the original written purchase and sale agreements for specific performance to convey the land at issue. *See Stearns*, 63 Mass. at 34-36; *McKinley*, 62 Mass. App. Ct. at 619-21. They sought to enforce the oral modifications to the time and mode of their *own* performance to prevent the defendant sellers from backing out of the transaction on grounds that the plaintiffs failed to meet the respective time and mode of performance terms of the original contracts. *Id.*

[10] *McKinley* did not overrule or alter the holdings of any of the post-*Cummings* cases, nor did it overturn the well-established principle that a party simply cannot bring an action upon the oral modification of a contract within the Statute of Frauds, regardless of whether the modification amounts to a substituted performance. *See* 62 Mass. App. Ct. at 619-21.

be estopped from raising the Statute of Frauds defense. *Cellucci v. Sun Oil Co.*, 2 Mass. App.
Ct. 722, 728 (App.Ct. 1974), *aff'd* 368 Mass. 811 (1975). However, in order preclude the Statute
of Frauds defense, a plaintiff must prove the following elements: "(1) A representation or
conduct amounting to a representation intended to induce a course of conduct on the part of the
person to whom the representation is made. (2) An act or omission resulting from the
representation, whether actual or by conduct, by the person to whom the representation is made.
(3) **Detriment to such person as a consequence of the act or omission.**" *Id.* (emphasis added);
*see Frederick v. Conagra, Inc.*, 713 F. Supp. 41, 45 (D.Mass. 1989). Under such circumstances,
the promise is only enforceable "if injustice can be avoided only by enforcement of the promise."
*Hoffman v. Optima Systems, Inc.*, 683 F. Supp. 865, 869 (D.Mass. 1988) (quoting Restatement
(Second) of Contracts, § 139(1) (1981)).[11]

Thus, in order to establish equitable estoppel as a bar to a Statute of Frauds defense, Croft
must prove that he suffered **substantial detriment** as a result of a material representation or
conduct by Serta. *See Cellucci*, 2 Mass. App. Ct. at 728; *compare Daly v. Williams*, 60 Mass.
App. Ct. 1115, 1115 n.1 (App.Ct. 2004) (use of estoppel to counter Statute defense failed
because lack of evidence of substantial detrimental reliance), *with Frederick*, 713 F. Supp. at 45
(finding estoppel because detriment suffered where employee quit prior job, moved family from
out-of-state and contracted for construction of new home), and *Hoffman*, 683 F. Supp. at 869
(finding estoppel because detriment suffered where employee resigned from prior job).[12]

---

[11] The remedy granted for a breach of an oral promise under these circumstances is limited as justice requires, rather
than full contract, or benefit-of-the-bargain, damages. *See Hoffman*, 683 F. Supp. at 869; *Vmark Software, Inc. v.
EMC Corp.*, 37 Mass. App. Ct. 610, 611 n.2 (App.Ct. 1994) (distinguishing reliance damages, as those designed to
place plaintiff in as good a position as he would have been had the contract not been made, from expectation or
benefit-of-the-bargain damages, which place plaintiff in the same position as if the contract had been performed).

[12] *See also Walsh v. Slater*, 361 Mass. 875 (1972) (no basis for estoppel where no evidence of improvements, repairs
or expenditures in reliance on contract); *Chase v. Aetna Rubber Co.*, 321 Mass. 721, 724 (1947) (no estoppel
because no expenditures, improvements or repairs made in reliance upon contract's performance).

It is undisputed that Croft did not suffer any detriment in reliance upon any representations made by Serta. First, even if any representation or conduct by Serta induced a course of conduct by Croft,[13] Croft's only act or omission resulting therefrom was continuing his employment with Serta for three months beyond June 22, 2001. Otherwise, Croft would have effected his termination on June 22, 2001. Croft admits that other than continuing to work for Serta beyond June 23, 2001, he did not do anything different in reliance on Sherman's alleged representations in February 2001, such as decline other job opportunities or incur any substantial expenditure. Croft Tr., 280-286. *See Delaware & Hudson Co. v. Boston R.R. Holding Co.*, 328 Mass. 63, 80 (1951) (to establish estoppel, one must have been "induced to do something different from what otherwise would have been done and which has resulted to his harm"); *Glass v. Hulbert*, 102 Mass. 24, 31-32 (1869) (plaintiff must show some change in his situation for which he is left without redress if no contract). Croft, thus, did not suffer any detriment from continuing to work for Serta from June 23, 2001 through September 19, 2001. *Id.* Croft Tr. 283.

---

[13] Indeed, Croft cannot identify any material misrepresentation or conduct by Sherman or Serta occurring prior to his termination on September 19, 2001 that induced Croft to believe that Serta agreed to modify the Agreement and guarantee his employment through December 31, 2004 under the terms of the February 5 fax. *See Frederick*, 713 F. Supp. at 45. For instance, Croft's 2001 salary increase not only preceded the February 5 fax, it also was consistent with Paragraph 2 of the original Agreement, which called for an annual increase at the Board's discretion. See Jan. 30, 2001 Guiney E-mail, attached to Facts as Ex. G. Thus, the 2001 salary increase could not imply any acquiescence to the purportedly modified terms. Likewise, the April 11, 2001 Bonus Memorandum was consistent with Paragraph 3 of the original Agreement, and it conflicted with the new bonus program to which the parties allegedly agreed. See Apr. 11, 2001 Memo, attached to Facts as Ex. J.

Moreover, in order for Serta to lead Croft to believe that the Company had agreed to the modified Agreement and thereby induce him to continue working for Serta beyond June 22, 2001, the purported conduct had to occur between February 5, 2001 and June 22, 2001. Croft can point to no such conduct occurring before June 22, 2001, let alone before his September 19, 2001 termination. Any subsequent conduct is irrelevant to Croft's burden to establish his equitable estoppel theory (and his promissory estoppel claim, as discussed below), and thus, it is inadmissible at this stage. For instance, to the extent that Croft relies upon Serta's payment of the 2 years Additional Payment, these payments did not commence until October 1, 2001, after the relevant time period during which Croft could have acted in reliance upon any representation by Serta. Indeed, Serta paid the Additional Payment because it believed, rightly or wrongly, that this post-employment obligation survived the life of the contract pursuant to Paragraph 6 of the Agreement. Sherman Tr. 61, 73-74; Guiney Tr. 27-28. *See Litton Financial Printing Div. v. NLRB*, 111 S. Ct. 2215, 2226, 501 U.S. 190, 207 (1991) ("Rights which accrued or vested under the agreement will, as a general rule, survive termination of the agreement."). Likewise, to the extent that Croft cites the 2001 bonus paid to Reardon in the Spring of 2002, this event occurred almost one year after the time in question and well after Croft's termination. Accordingly, such alleged conduct is irrelevant, immaterial and inadmissible.

In sum, because Croft admittedly did not suffer any actual detriment, he cannot establish equitable estoppel to preclude Serta's Statute of Frauds defense. Because any new agreement, or the alleged modification, was not in writing and signed by Serta, the Statute of Frauds bars Croft's contract claim as a matter of law.

## II.    EVEN IF CROFT'S CONTRACT CLAIM IS VIABLE, SERTA DID NOT BREACH THE POST-TERMINATION SALARY AND BONUS PROVISIONS.

Even if the Statute does not bar Croft's contract action, Paragraph 10 of the allegedly modified Agreement did not require Serta to pay Croft continued salary or bonuses after his September 19, 2001 termination. First, Paragraph 10 expressly limited the salary continuation obligation to a termination (without cause) occurring during the "Designated Term." The "Designated Term" expired on June 22, 2001. Likewise, Paragraph 10 expressly limited the post-termination bonus payment obligation to a termination occurring during the "Designated Term." Further, Paragraph 10 explicitly conditioned Serta's obligation to pay these amounts upon Croft not breaching any provision of Exhibit A to the Agreement, of which Croft undisputedly breached Paragraph 1(b) when he failed to deliver Company property to Serta promptly upon the termination of his employment.

Interpretation of a contract is ordinarily a question of law for the Court. *Allstate*, 412 Mass. at 446-47. Where the language of a contract is unambiguous, the Court must give the words their plain meaning or their well-established meaning, and enforce the contract according to its terms. *See Schwanbeck v. Federal-Mogul Corp.*, 412 Mass. 703, 706 (1992); *City of Haverhill v. George Brox, Inc.*, 47 Mass. App. Ct. 717, 720 (App.Ct. 1999). The subjective contemplations of the parties are immaterial. *Id.*

### A.    PARAGRAPH 10 DID NOT REQUIRE SERTA TO PAY CROFT CONTINUED SALARY IF IT DISCHARGED HIM AFTER JUNE 22, 2001.

Throughout the Agreement, it clearly differentiates between "Designated Term" and

"Term." Paragraph 1 unambiguously defines the "Designated Term" as the initial two years of Croft's employment from June 22, 1999 until June 22, 2001. Ex. A, at ¶ 1. The Agreement would automatically renew for periods of one year thereafter, unless earlier terminated as provided therein. Paragraph 1 clearly defines the "Term" as the collective sum of the "Designated Term" and any automatically renewed one-year periods. *Id.* Accordingly, the "Designated Term" ran from June 22, 1999 through June 22, 2001, and the collective "Term" ran from June 22, 1999 until June 22 of the final one-year renewal period, if any. *See id.*

Certain provisions of the Agreement specifically applied only to events occurring during the initial "Designated Term" (*see*, *e.g.*, ¶ 10), while other provisions applied to events occurring during the collective "Term" (*see*, *e.g.*, ¶¶ 2, 3, 4, 5, 7 and 8). Moreover, in Paragraph 12, the Agreement expressly distinguishes the "Designated Term" from the end of any subsequent one-year renewal period (*i.e.*, the "Term"). *See id.*, at ¶ 12. The Agreement further distinguishes the end of the "Designated Term" and "Term" from the termination of Croft's "employment." *See id.*, at ¶ 6. Accordingly, the meanings of "Designated Term," "Term" and "employment" are clear and unambiguous as defined and used within the Agreement.

Paragraph 10 of the Agreement expressly limited Serta's continued salary obligation to a termination (without cause) occurring only during the "Designated Term." Ex. A, at ¶ 10. Nothing in this provision required payment of continued salary for any termination occurring during the remainder of the "Term" or the life of the contract.[14] Because the Agreement unambiguously defines "Designated Term" in Paragraph 1 and clearly differentiates between "Designated Term" and "Term" throughout, the Court must give these words their plain meaning, and the subjective contemplations of the parties are immaterial. *See Schwanbeck*, 412

---

[14] Croft was represented by counsel during the 1999 negotiations with Serta concerning the original Agreement and the provisions contained therein.

Mass. at 106; *City of Haverhill*, 47 Mass. App. Ct. at 720.

Accordingly, Paragraph 10's salary continuation obligation only applied to a termination (without cause) occurring on or before June 22, 2001.  Moreover, even if the February 5 fax extended the "Contract Length" until December 31, 2004, it did not expressly modify the "Designated Term," let alone the collective "Term."[15]  Thus, even if a binding modified contract existed, Serta did not breach Paragraph 10, and the Company does not owe Croft any continued salary payments from October 1, 2001 through December 31, 2004.

### B.    PARAGRAPH 10 DID NOT REQUIRE SERTA TO PAY CROFT ANY BONUSES IF IT TERMINATED HIM AFTER JUNE 22, 2001.

With respect to the purported bonuses owed to Croft, for the same reasons provided in the preceding section, the post-termination bonus payment obligation contained in Paragraph 10 only applied to a termination occurring during the "Designated Term."  Therefore, even if modified and in effect at the time of Croft's termination, Paragraph 10 of the Agreement did not require Serta to pay Croft any bonuses.

Further, even if Paragraph 10 applied to Croft's termination, it only required payment of an "accrued and unpaid bonus, if any, vested."  Ex. A, at ¶ 10.  The February 5 fax did not guarantee any minimum bonus, nor did it call for any bonus to accrue or vest during the year.  As such, pursuant to the language of Paragraph 10, Serta did not owe Croft any accrued and vested bonus as of the effective date of his termination.  Indeed, even if the orally defined bonus program alleged by Croft was in effect, Croft's bonus still would not have accrued or vested before the end of the year because it was based on year-end profits.  Accordingly, pursuant to Paragraph 10, Serta would not have owed Croft any accrued and vested bonus in 2001.

---

[15] Even if the February 5 fax modified the "Term" (*i.e.*, if "contract length" represented the "Term"), Paragraph 10 explicitly did not apply to a termination occurring during the collective "Term."  Ex. A, at ¶ 10.

Further, Serta did not owe Croft bonuses for the years 2002 through 2004, during which Croft did not work for Serta, because, at best, Paragraph 10 merely required payment of the accrued bonus, if any, vested up to the date of termination (*i.e.*, September 19, 2001) rather than through the end of the Designated Term (or even the end of the Term or contract). The 2002, 2003 and 2004 bonuses, if any, had not accrued and vested as of Croft's termination.

### C. EVEN IF PARAGRAPH 10'S OBLIGATIONS APPLIED, CROFT FAILED TO MEET A CONDITION PRECEDENT TO SERTA'S OBLIGATION.

Even if Paragraph 10's post-termination salary and bonus obligations applied, Serta did not breach any obligation therein because Croft failed to meet an explicit condition precedent to Serta's obligation. Paragraph 10 unambiguously provides that: "[t]he amounts set forth in this Paragraph 10 shall be payable to you *only if* you have not breached the provisions of Paragraph 14 hereof." Ex. A, ¶ 10 (emphasis added). Paragraph 10, thereby, expressly conditioned Serta's obligation to pay Croft the amounts set forth in Paragraph 10 upon Croft not breaching Paragraph 14 of the Agreement. *See Mass. Mun. Wholesale Elec. Co. v. Town of Danvers*, 411 Mass. 39, 45-46 (1991) (words often used to create condition precedent include "if") (citing Restatement (Second) of Contracts, § 226, cmt. a (1981)). Paragraph 14, in turn, unambiguously bound Croft to the provisions contained in Exhibit A to the Agreement. Ex. A, ¶ 14.

In Exhibit A to the Agreement, Paragraph 1(b) clearly defined "property of the Company" as including all memoranda, notes, lists, records and related documents and other documents or papers relating to the Company or its business. Ex. A, at Exhibit A, ¶ 1(b). Paragraph 1(b) required Croft to deliver all Company property in his possession "to the Company promptly upon the termination of [his] employment with the Company…" *Id.*

Croft undisputedly breached Paragraph 1(b) when he failed to deliver Company property to Serta promptly upon his termination. Croft Tr. 17-18, 21-22. Accordingly, Croft breached

Paragraph 14 of the Agreement, and in turn, he failed to meet the condition precedent contained in Paragraph 10, thereby rendering Serta's obligations in Paragraph 10, if any, unenforceable. *See Danvers*, 411 Mass. at 45 (if the condition is not fulfilled, the obligations attached to the condition may not be enforced).[16]

Paragraph 10 unambiguously established Croft's requirement to abide by Paragraph 14 and, in turn, Exhibit A to the Agreement, as a condition precedent to Croft's obligation to pay the amounts set forth in Paragraph 10. The Court must give the words of Paragraph 10 and 14 of the Agreement, and Paragraph 1(b) of Exhibit A, their plain meaning, and the subjective contemplations of the parties are immaterial. *See Schwanbeck*, 412 Mass. at 106.

In sum, even if Croft's contract claim is viable, Serta did not breach Paragraph 10 of the Agreement. Thus, Serta does not owe Croft any contract damages, and his contract claim fails.

## III.  CROFT'S PROMISSORY ESTOPPEL CLAIM FAILS AS A MATTER OF LAW BECAUSE HE DID NOT SUFFER ANY DETRIMENT.

Croft's promissory estoppel claim fails because he did not suffer any detriment as a result of any purportedly unfulfilled promise by Serta. Similar to equitable estoppel, in order to state a claim for promissory estoppel, Croft must prove that (1) Serta made a promise which it should have reasonably expected to induce action or forbearance of a definite and substantial character on the part of Croft, (2) the promise did induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise. *Steinke v. Sungard Financial Sys., Inc.*, 121 F.3d 763, 776 (1st Cir. 1997). In Massachusetts, another "'element of promissory estoppel is

---

[16] Serta anticipates that Croft will argue, as he did in Plaintiff's Opposition to Defendant's Motion for Leave to File Amended Answer to Plaintiff's Complaint, that Croft's breach did not relieve Serta of its purported obligations under Paragraph 10 because Croft's breach was immaterial. Croft's argument is misplaced, and the case law previously cited by Croft is inapplicable. Croft apparently confuses Serta's defense that Croft failed to meet a condition precedent with the separate defense of breach excusing the non-breaching party's performance, which is not being asserted by Serta here. Unlike this defense, the failure to meet a condition precedent does not require a material breach. Rather, if the condition is not fulfilled, the obligations attached to the condition may not be enforced, regardless of whether Croft's failure to meet the condition was material. *See Danvers*, 411 Mass. at 45.

that the party invoking it must have reasonably relied on the alleged promise to his **detriment**.'" *Coll v. PB Diagnostic Sys., Inc.*, 50 F.3d 1115, 1124 (1st Cir. 1995) (quoting *Hall v. Horizon House Microwave, Inc.*, 24 Mass. App. Ct. 84, 93-94 (App.Ct. 1987)) (emphasis added); *see Steinke*, 121 F.3d at 776; *Boylston Dev. Group, Inc. v. 22 Boylston St. Corp.*, 412 Mass. 531, 542 & n.17 (1992) (discussing difference between "promissory estoppel" and "equitable estoppel").

Croft's only action or forbearance potentially induced by any alleged promise by Serta was Croft's continuing to work for Serta from June 23, 2001 through September 19, 2001.  As discussed above, Croft admits that he did not suffer any actual losses by continuing to work for Serta during that period, as compared to the position he would have been in if Sherman had not promised to extend his employment beyond June 22, 2001.[17]  Croft Tr. 280-86.  Croft concedes that he did not he did not do anything different in reliance on Sherman's alleged representations in February 2001, such as decline other job opportunities or incur any substantial expenditure. Croft Tr., 280-86.  Thus, it is undisputed that Croft did not suffer any detriment as a result of any purported unfulfilled promise by Serta or Sherman.  Accordingly, Croft's promissory estoppel claim fails as a matter of law.  *See Steinke*, 121 F.3d at 776; *Coll*, 50 F.3d at 1124; *Cellucci*, 2 Mass. App. Ct. at 729 (decisive factor was the plaintiff's detrimental reliance in breaking off negotiations with defendant's competitor); *Beriont v. GTE Labs., Inc.*, 60 Mass. App. Ct. 1108, 2003 WL 22992122, at ***4 (App.Ct. 2003) (affirming summary judgment for defendant based on failure to show detriment, such as forcing plaintiff to take an inferior position, even where declined a job offer) (copy attached).

---

[17] Any damages for a promissory estoppel claim would be limited to reliance damages rather than contract damages, thereby placing Croft in as good a position as he would have been in had the alleged contract not been made.  *Vmark Software*, 37 Mass. App. Ct. at 611 n.2 (equating reliance damages to actual, or out-of-pocket, loss proximately suffered in tort); *M.H. Promotion Group, Inc. v. Cincinnati Milacron Inc.*, No. 96-0832C, 1998 WL 52239, at *4-5 (Mass.Super. Jan. 28, 1998) (promissory estoppel damages limited to the actual loss proximately caused by the reliance, "or the amount needed to place the plaintiff in the same position he would have been in had the tortious representation never been made") (copy attached).

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant's Motion for Summary

Judgment and dismiss all of Plaintiff's claims with prejudice.[18]


Respectfully submitted,

DEFENDANT,
NATIONAL BEDDING COMPANY *D/B/A*
SERTA MATTRESS COMPANY

By its attorneys,


_/s/  Daniel B. Klein_____
Daniel B. Klein
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210

Dated: September 14, 2005           617-946-4800


## CERTIFICATE OF SERVICE

I, Daniel B. Klein, hereby certify that on this 14th day of September, 2005, a true copy of the foregoing document was served electronically and by overnight mail to Laura R. Studen, Esq., Burns & Levinson LLP, 125 Summer Street, Boston, MA 02110, Counsel for Plaintiff.


_/s/  Daniel B. Klein_____
Daniel B. Klein

---

[18] The Court should also dismiss Croft's claim for declaratory judgment (Count I) because Croft is not entitled to any damages on his claims for breach of contract or promissory estoppel for the reasons discussed above.

21