# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PAUL R. CROFT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-11487-RWZ |
| ) | |
| NATIONAL BEDDING COMPANY *D/B/A* ) | |
| SERTA MATTRESS COMPANY, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S STATEMENT OF UNDISPUTED, MATERIAL FACTS

Pursuant to Local Rule 56.1, the Defendant, National Bedding Company *d/b/a* Serta Mattress Company ("Serta," "Defendant" or the "Company"), hereby submits this Statement of Undisputed Material Facts in support of its Motion for Summary Judgment.[1]

### A. SERTA'S HIRE OF CROFT

1. Serta hired the Plaintiff, Paul Croft ("Croft" or "Plaintiff"), along with his peer, Jeremiah Reardon, and his supervisor, Kevin Toman, when Serta acquired the assets of their prior employer, S-N Bedding Company, in July 1999. *See* Transcript Excerpts from Deposition of Paul Croft, dated Jan. 13 & 14, 2005, attached hereto as Exhibit D ("Croft Tr."), at 41-42.

2. Croft worked for Serta until his termination on September 19, 2001 as a Vice President of the Company's Middleborough Division. Croft Tr. 62, 250.

3. Croft insisted that Serta execute an employment contract with him as a condition of his agreement to work for Serta. Croft Tr. 54.

---

[1] For purposes of Defendant's Motion for Summary Judgment only, the facts in the light most favorable to Plaintiff are deemed to be true. Defendant reserves the right to contest these facts if any claim survives summary judgment.

4. On June 23, 1999, Croft executed an Employment Agreement with Serta. *See* Employment Agreement, attached hereto as Exhibit A (the "Agreement") (incorporated herein by reference).

5. Attorney Laura Studen represented Croft in the negotiations with Serta concerning the Agreement. Croft Tr. 45.

6. Serta had not previously executed employment agreements with any of its other employees or executives. *See* Transcript Excerpts from Deposition of Robert Sherman, dated Jan. 14, 2005, attached hereto as Exhibit E ("Sherman Tr."), at 40-42.

B. **CROFT'S EMPLOYMENT AGREEMENT**

7. Paragraph 1 of the Agreement provides, in part, as follows:

> Subject to the terms and upon the conditions set forth herein, the Company hereby agrees to employ you for a two-year term commencing on the date hereof and expiring on June 22, 2001 (the "Designated Term"), which term will automatically renew for periods of one-year thereafter, unless earlier terminated as herein provided (the "Term")….

Ex. A, at ¶ 1.

8. Paragraph 2 of the Agreement provides that, during the Term, the Company would pay Croft an annual salary of $200,000 per year or such higher rate as the Board might designate from time to time. *Id.*, at ¶ 2.

9. Paragraph 3 of the Agreement provides that, during the Term (other than 1999), Croft would be eligible to receive an annual performance bonus award in an amount not to exceed fifty percent of his annual salary ("Bonus Award"), and that the amount of the bonus, "if any," would be determined by the Board in its sole discretion, from time to time. *Id.*, at ¶ 3. Paragraph 3 further states that the Bonus Award for the balance of the calendar year 1999 would be fifty percent of Croft's annual salary, prorated from the date of closing of the Company's asset purchase through December 31, 1999. *Id.*

10. Paragraph 12 of the Agreement provides, in part, as follows:

> You may terminate your employment with the Company or any of its Affiliates effective after the Designated Term upon giving written notice to the Company six months' prior to the end of the Designated Term or the end of any subsequent one year renewal period;…

Ex. A, at ¶ 12.

11. Pursuant to Paragraph 6 of the Agreement, "[u]pon termination of [Croft's] employment with the Company" by Serta for any reason other than death or disability, or by Croft with "Good Reason," as defined therein, the Agreement obligated Serta to pay Croft two years of "Additional Payment," equating to two years salary in exchange for a one-year non-competition period, payable via normal payroll procedures over the two years. Ex. A, at ¶ 6.

12. According to Paragraph 6 of the Agreement, the Additional Payment obligation applied "[u]pon the termination of [Croft's] employment." *Id.*

13. Serta believed that its obligation to pay Croft the Additional Payment upon the termination of his employment, in exchange for his not competing for one year, survived the expiration of the contract. Sherman Tr. 61, 73-74; *see* Transcript Excerpts from Deposition of Julia Guiney, dated Mar. 25, 2005, attached hereto as Exhibit F ("Guiney Tr."), at 27-28.

14. Paragraph 10 of the Agreement provides as follows:

> If you are terminated without Cause during the Designated Term or you terminate your employment with the Company or any of its Affiliates for Good Reason (as defined below), the Company's obligation to you shall be limited to the Additional Payment and the payment, at the times and upon the terms provided for herein, of (i) your Annual Salary for the remaining Designated Term of this Agreement, and (ii) accrued and unpaid Benefits and accrued and unpaid bonus, if any, vested up to the effective date specified in the Company's notice of termination. The amounts set forth in this Paragraph 10 shall be payable to you only if you have not breached the provisions of Paragraph 14 hereof.

Ex. A, at ¶ 10.

15. Paragraph 14 of the Agreement, in turn, provides as follows:

> You shall be bound by the provisions of Exhibit A which is attached hereto and incorporated herein by reference.

Ex. A, at ¶ 14.

16. Paragraph 1(b) of Exhibit A to the Agreement, in turn, provides, in part, as follows:

> **Property of the Company.** All memoranda, notes, lists, records, engineering drawings, technical specifications and related documents and other documents or papers (and all copies thereof) relating to S-N BC, the Company, the Company Business, any of the Company's Affiliates, any entity which might thereafter become an Affiliate thereof or the business of such Affiliates, including such items stored in computer memories, microfiche or by any other means, made or compiled by or on behalf of you during the course of your employment by… the Company after the date hereof relating to the Company… shall be the property of the Company, and shall be delivered to the Company promptly upon the termination of your employment with the Company or at any other time upon request.

Ex. A, at Exhibit A, at ¶ 1(b).

### C. CROFT'S TERMINATION OF THE AGREEMENT

17. On December 20, 2000, Laura Studen, counsel for Croft, Reardon and Toman (the "Executives"), sent Serta's counsel a letter on behalf of the three Executives, stating that:

> Under the terms of paragraph twelve of the Agreements, the Executives may terminate their employment with the Company effective after the Designated Term (i.e., June 22, 2001) upon giving written notice to the Company six months prior to the end of the Designated Terms (i.e., December 21, 2000). In accordance with these terms, consider this letter notice to the Company that Messrs. Toman, Reardon, and Croft intend to terminate their employment effective June 22, 2001.

*See* Dec. 20, 2000 Letter, attached hereto as Exhibit B (the "December 20 letter").

18. The December 20 letter further stated, "Although this letter gives timely notice of intention to terminate pursuant to the provisions of the Agreement, Messrs. Toman, Reardon, and Croft are willing to discuss and negotiate the terms of a new Agreement…" *Id.*

4

19. According to the letter, the three Executives sought a "new Agreement" with changes concerning the calculation of bonuses and annual bonus awards and the conditions under which the Executives might terminate and be terminated. *Id.*

20. In response to the December 20 letter, Serta notified Toman that he should remain home for the remainder of the Designated Term and relieved him of any responsibilities. Sherman Tr. 53.

### D. NEGOTIATIONS CONCERNING A NEW EMPLOYMENT AGREEMENT AND THE FEBRUARY 5, 2001 FACSIMILE

21. Serta initially did not provide Croft an annual salary increase in early January 2001 because management understood at that time that Croft did not intend to work for Serta beyond June 22, 2001. Sherman Tr. 93-94.

22. During January and early February 2001, Croft held ongoing discussions and exchanged numerous notes with Robert Sherman, Serta's President, in an effort to negotiate a new contract, or allegedly, to modify the original Agreement. Croft Tr. 157-161, 167-170, 176-183; Sherman Tr. 57-60.

23. After Croft indicated to Sherman that he might be willing to continue his employment with Serta beyond June 22, 2001, Sherman authorized Serta to provide Croft an annual salary increase of six percent, thereby raising his salary from $200,000 to $212,000, effective February 1, 2001. Guiney Tr. 36-38; Sherman Tr. 93-94; *see* Jan. 30, 2001 Guiney E-mail, attached hereto as Exhibit G.

24. Management made its decision to provide Croft this increase no later than January 30, 2001, as demonstrated by e-mail correspondence from Julia Guiney, Serta's Vice President of Human Resources, to the Middleborough plant's controller, Perry Vockrodt. Guiney Tr. 36-38; Ex. G, Jan. 30, 2001 Guiney E-mail.

25. Subsequently, on February 5, 2001, Croft received a faxed document from Serta's general mailroom fax machine. *See* Feb. 5, 2001 Fax (the "February 5 fax"), attached hereto as Exhibit C (incorporated herein by reference); Croft Tr. 176; Guiney Tr. 40; Sherman Tr. 69.

26. According to Croft, Sherman and he discussed this fax on or about February 5, 2001, and Croft stated "I accept." Croft Tr. 180-183, 185.

27. According to Croft, Serta and he orally modified "material terms" of the Agreement on or about February 5, 2001. Croft Tr. 201, 304-305; *see* Plaintiff's Response to Defendant's First Set of Interrogatories, at Answer No. 4, attached hereto as Exhibit H; April 23, 2004 Correspondence from Attorney Laura R. Studen to Robert Sherman, attached hereto as Exhibit I.

28. The February 5 fax did not contain any signature of Sherman or any representative of Serta. Ex. C.

29. The February 5 fax did not contain Croft's signature. *Id*.

30. The language contained in the February 5 fax did not identify the parties. *Id*.

31. The February 5 fax did not contain the words, "Term" or "Designated Term." *Id.*

32. The February 5 fax did not set forth any minimum bonus, nor did it state what Croft's bonus would be if Company profits did not reach ten percent or more. *Id.*

33. Between February 2001 and September 2001, the parties did not engage in any further negotiations or discussions concerning the status of Croft's employment. Croft Tr. 204, 206.

34. On April 11, 2001, Croft received a memorandum concerning his 2001 bonus. *See* April 11, 2001 Memorandum, attached hereto as Exhibit J; Croft Tr. 234-235.

35. The April 11, 2001 memorandum made no mention of either the purported modification of Croft's Agreement or any new bonus program. Ex. J.

36. The memorandum stated that Croft must be employed by the Company in his current position as of December 31, 2001 to qualify for the 2001 bonus program. *Id*.

37. Croft never voiced any objection at the time to the April 11, 2001 memorandum or its applicability to him. Croft Tr. 242.

### E. SERTA'S TERMINATION OF CROFT'S EMPLOYMENT

38. On September 19, 2001, Serta terminated Croft's employment.[2] Croft Tr. 250.

39. From October 1, 2001 through September 30, 2003, Serta paid Croft the Additional Payment equal to $212,000 per year less standard payroll deductions in exchange for his not competing with the Company for one year. Croft Tr. 258-260.

40. Croft knew on or about October 10, 2001, that Serta was commencing payment of the Additional Payment for a two-year period. Croft Tr. 266-269.

41. From approximately October 1, 2001 through September 30, 2003, Plaintiff accepted the two-year post-employment Additional Payment from Serta without objecting or asserting any belief that Serta also owed him continued salary through December 31, 2004. Croft Tr. 266-269.

42. Croft suffered no out-of-pocket losses by continuing to work for Serta from June 23, 2001 through September 19, 2001. Croft Tr. 280-286.

43. Croft did not turn down any job opportunities or business ventures by continuing to work for Serta between June 22, 2001 and September 19, 2001. Croft Tr. 280-286.

---

[2] The reasons for Serta's termination of Croft's employment, or whether Serta terminated Croft for Cause, as defined in the Agreement, is not at issue for summary judgment purposes.

7

44. At the time of his September 19, 2001 termination, Croft possessed papers, documents and/or records pertaining to the Company's business. Croft Tr. 17-18, 21-22.

45. Croft did not deliver these documents and records to the Company promptly upon the termination of his employment. Croft Tr. 17-18, 21-22.

46. Croft did not deliver these documents to the Company at any time prior to producing them in response to requests for production of documents as part of the instant litigation. Croft Tr. 21-22.

                    Respectfully submitted,

                    DEFENDANT,
                    NATIONAL BEDDING COMPANY *D/B/A*
                    SERTA MATTRESS COMPANY

                    By its attorneys,

                    /s/ Daniel B. Klein
                    Daniel B. Klein
                    SEYFARTH SHAW LLP
                    Two Seaport Lane, Suite 300
                    Boston, MA 02210

Dated: September 16, 2005      617-946-4800

## CERTIFICATE OF SERVICE

I, Daniel B. Klein, hereby certify that on this 16th day of September, 2005, a true copy of the foregoing document was served electronically and by overnight mail to Laura R. Studen, Esq., Burns & Levinson LLP, 125 Summer Street, Boston, MA 02110, Counsel for Plaintiff.

                    /s/ Daniel B. Klein
                    Daniel B. Klein