UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAUL R. CROFT, )
                                                )
        Plaintiff, )
                                                )
v.                                              )  CIVIL ACTION NO.
                                                )  04CV-11487-RWZ
NATIONAL BEDDING COMPANY D/B/A )
SERTA MATTRESS COMPANY, )
                                                )
        Defendant. )
                                                )

## PLAINTIFF'S OPPOSITION TO DEFENDANT NATIONAL BEDDING COMPANY D/B/A SERTA MATTRESS COMPANY'S MOTION FOR SUMMARY JUDGMENT

Pursuant to United States District Court Rule 56 and United States District Court for the District of Massachusetts Local Rule 56.1, Plaintiff Paul R. Croft (hereinafter "Mr. Croft") hereby submits *Plaintiff's Opposition to Defendant, National Bedding Company d/b/a Serta Mattress Company's Motion for Summary Judgment*. As Croft has presented genuine issues of material fact[1] supporting his claims that Defendant National Bedding Company d/b/a Serta Mattress Company (hereinafter "Serta" or "Defendant") breached his Employment Agreement, Defendant is not entitled to a judgment as a matter of law.

## LEGAL ARGUMENT

Serta is not entitled to summary judgment because the evidence, viewed in the light most favorable to Mr. Croft, raises genuine issues of material fact regarding whether Mr. Croft terminated his Employment Agreement and whether the Employment Agreement, as orally modified, is enforceable.

---

[1]  See *Statement of Facts for Which There is a Genuine Issue to be Tried* and exhibits attached thereto, submitted herewith.

J:\Docs\24315\00001\00957919.DOC

I.    **CROFT DID NOT TERMINATE THE CONTRACT AS THE DECEMBER 20, 2000 LETTER WAS A PROPOSAL TO RE-NEGOTIATE THE EXISTING AGREEMENT.**

The December 20, 2000, letter[2] to Serta did not terminate Mr. Croft's Employment Agreement with Serta because it was a proposal to re-negotiate the existing Employment Agreement; an invitation Serta accepted.[3]   Even if the letter did terminate the Employment Contract, it did not do so on December 20, 2000, the date of the letter.  Finally, Serta partially performed the Employment Agreement as orally modified.  In making these factual determinations, the parole evidence rule does not preclude evidence of the parties' intent regarding the *letter*, as the *letter* is not an integrated contract or agreement. As genuine issues of material fact exist regarding these questions, summary judgment in favor of Serta is inappropriate.

A.    **The December 20, 2000 Letter Was  a Proposal to Re-Negotiate the Existing Employment Agreement.[4]**

The Employment Agreement contains a provision requiring Mr. Croft to give written notice to Serta six months prior to the end of the Designated Term or the end of any subsequent one year renewal period prior to terminating his employment.[5] On December 20, 2000, pursuant to this paragraph, Mr. Croft gave notice of his *intention* to terminate in the event the parties were unsuccessful in re-negotiating three issues in the Employment Contract.[6]  Serta now argues that the December 20, 2000, letter terminated Mr. Croft's employment contract.

---

[2]      Letter dated December 20, 2000, from Laura R. Studen to Clarissa Cerda, attached hereto as Ex. B.
[3]      December 19, 2000 Memo, attached hereto as Ex. C; Deposition of Robert Sherman, attached hereto as Ex. H, pp. 57-58; February 8 Memo, written by Robert Sherman, attached hereto as Ex. O;
[4]      Id.
[5]      Letter Employment Agreement, attached hereto as Ex. A, ¶ 12.
[6]      Ex. B; Ex. C; Deposition of Paul R. Croft, attached hereto as Ex. G, pp. 121,149-151, 166-172; Deposition of Julia Guiney, attached hereto as Ex. I, pp. 26-27, 33.

J:\Docs\24315\00001\00957919.DOC                                      2

Relying on <u>Fenoglio v. Augat, Inc.</u>, the Defendant claims that the December 20, 2000, letter unambiguously provided termination notice pursuant to the Employment Agreement.[7] 50 F. Supp.2d 46, 52-53 (D. Mass. 1999)  In <u>Fenoglio</u>, the employer terminated its employee in a letter, accompanied by a schedule with a provision that read, "This serves also as notice of termination of all other contracts between you and the Company requiring notice of termination. . ." <u>Id.</u> at 50-51. This provision in the schedule constituted written notice of termination of the employment contract, as the language was stated "quite clearly and *unconditionally*." <u>Id.</u> at 52-53 (emphasis added).

Here, the December 20th letter expressly conditions Mr. Croft's termination on Serta's unwillingness to engage in the re-negotiation of the Employment Agreement.  The letter was a proposal to Serta in which Mr. Croft provided notice of his intent to terminate his employment *if Serta were unwilling to re-negotiate terms of the existing Employment Agreement*, not a definitive termination of his employment pursuant to the terms of the Agreement. The letter states:

> Under the terms of paragraph twelve of the Agreements, the Executives may terminate their employment with the Company effective after the Designated Term (*i.e.,* June 22, 2001) upon giving written notice to the Company six months prior to the end of the Designated Terms (*i.e.,* December 21, 2000). In accordance with the terms, consider this letter notice to the Company the Messrs. Toman, Reardon, and Croft *intend* to terminate their employment effective June 22, 2001... Although this letter gives timely notice of *intention* to terminate pursuant to the provisions of the Agreement, Messrs. Toman, Reardon, and Croft are *willing to negotiate* the terms of a new Agreement.[8]

In accordance with the December 20th letter, Mr. Croft and Serta re-negotiated the terms of the Employment Agreement.  Serta understood Mr. Croft's intention was to re-negotiate, not

---

[7]    *Memorandum of Law in Support of Defendant's Motion for Summary Judgment* (hereinafter "*Defendant's Memo*"), p. 3.

[8]    Ex. B, emphasis added.

terminate.[9] Based on the modification of terms resulting from Serta's willingness to re-negotiate, Mr. Croft rescinded his notice of intention to terminate,[10] accepted the re-negotiated terms of continued employment,[11] and continued to perform services for Serta under the modified contract terms.[12] Serta performed under the terms of the modified contract until September 19, 2001, when it terminated Mr. Croft[13] without notice and in breach of the Employment Agreement as orally modified.[14]

There exists a genuine issue of material fact as to whether the December 20th letter terminated the Employment Agreement. As such, summary judgment in favor of Serta is inappropriate.

**B.     The Employment Agreement was Still in Effect in February 2001 When the Parties Orally Modified It.**

Mr. Croft's alleged termination of the Employment Agreement would not have taken immediate effect. Rather, where a contract requires notice prior to termination, "the contract remains in force and must continue to be performed according to its terms during the specified period after receipt of the notice of termination." Fenoglio, 50 F. Supp.2d at 52 quoting 6 Corbin on Contracts § 1266, at 66 (1063).

---

[9]       Ex. C; Ex. H, pp. 57-58; Ex. G, pp. 121, 148-151, 166-172; Ex. I, pp. 26-27, 33. Serta asserts that Mr. Croft's intention in sending the December 20th letter is inadmissible pursuant to the parole evidence rule. The parole evidence rule prohibits parole evidence only where it is used to alter or contradict express terms in a written contract. Bertelsen & Peterson Eng., Co., v. United States, 60 F.2d 745, 748 (1st Cir. 1932); Trent Partners & Assoc's v. Digital Equip. Corp., 120 F.Supp.2d 84 (D. Mass. 1999); Kobayashi v. Orion Ventures, Inc., 42 Mass. App. Ct. 492, 496, rev. denied 425 Mass. 1102, 680, 678 N.E.2d 180 (1997); Kerwin v. Donaghy, 317 Mass. 559, 567-68, 59 N.E.2d 299 (1945). The December 20th letter is not a contract. The parties intention regarding and interpretation of the December 20th letter is admissible.

[10]       Ex. G, pp. 176-180; 182-183.

[11]       Id.

[12]       Separation Notice dated 9/19/01, attached hereto as Ex. D; Memos regarding salary increase, attached hereto as Ex. M; Ex. H, pp. 49-51; Ex. G, p. 270.

[13]       Ex. D; Ex. I, p. 46; Ex. G, p. 78.; Ex. H, pp. 76-78, 125-126; Eg. G, p. 78.

[14]       Id; Ex. A, ¶ 12; February 5, 2001 Fax, attached hereto as Exs. E and F. This contract trumped Serta's policies and procedures. Ex. H, pp. 85-86; Employment Acknowledgment Form of Paul R. Croft referencing Employment Agreement, attached hereto as Ex. P.

The Employment Agreement required a six-month notice period for its termination.[15] Assuming, *arguendo*, that Mr. Croft effectively terminated the Employment Agreement pursuant to the December 20th letter, the termination of the agreement would not have taken effect until June 22, 2001. The contract remained in force through the specified six-month notice period, *i.e.*, from December 20, 2000 through June 22, 2001. Thus, the Agreement was still in effect in January and February 2001, when the parties were re-negotiating some of the Agreement's terms.[16] Mr. Sherman and Mr. Croft agreed to terms[17] and Mr. Sherman memorialized the terms in the February 5, 2001 facsimile from Serta to Mr. Croft.[18] There exists a genuine issue of material fact as to whether the December 20th letter terminated the Employment Agreement in December and, thus, prevented the parties from re-negotiating in January and February of 2001. As such, summary judgment in favor of Serta is inappropriate.[19]

### C.    Serta Acted in Accordance with the Employment Agreement as Orally Modified.

While Serta now disavows its obligations under the Employment Agreement as orally modified, for a period of time it performed under those terms. First, Serta paid Mr. Croft pursuant to the non-competition clause contained in the Employment Agreement as orally modified. Second, Serta increased Mr. Croft's and Jeremiah Reardon's (Mr. Reardon had the same contract as Mr. Croft[20]) rate of pay after the parties orally modified the Employment

---

[15]    Ex. A, ¶ 12.

[16]    *Defendant's Memo*, p. 4; Ex. C; Ex. G, pp. 121, 149-151, 166-172; Ex. H, pp. 57-58; Ex. I, pp. 26-27, 33; Ex. O.

[17]    Ex. G, pp. 263-265.

[18]    Exs. E and F; Ex. I, p. 40.

[19]    When "the question is one of interpreting written contract provisions," the question is one of law. All state Insur. Co., v. Bearce, 412 Mass. 442, 446-447, 589 N.E.2d 1235 (1992). See *Defendant's Memo*, p. 4. But where the "contract is ambiguous," the question is one of fact for the jury. Coll v. PB Diagnostic Sys., Inc., 50 F.3d 1115, 1122 (1st Cir. 1995). See *Defendant's Memo*, p. 4.

[20]    Ex. I, p. 26-27; Letter Employment Agreement between Serta and Jeremiah Reardon, attached hereto as Ex. K; Deposition of Jeremiah Reardon, attached hereto as Ex. L, pp. 87-89.

Agreement.[21]  Third, in 2002, Serta paid Jeremiah Reardon the bonus as calculated pursuant to the Employment Agreement as orally modified, while other Serta employees, who did not have the Employment Agreement as orally modified,  received a different bonus.[22]

As genuine issues of material fact exist as to whether the contract was orally modified, Serta's *Motion for Summary Judgment* should be denied.

**II.    THE EMPLOYMENT AGREEMENT, AS ORALLY MODIFIED, SATIFIES THE STATUTE OF FRAUDS.**

Serta's defense relies on its argument that the February 5, 2001, Memo fails to satisfy the Statute of Frauds. The February 5, 2001, Memo is simply evidence of the oral modification of the Employment Agreement. As the Employment Agreement meets all the requirements of the Statute of Frauds, so it does as orally modified.

**A.    The Origin of the February 5, 2001 Memo.**

Mr. Croft's claim relies on the fact that the February 5, 2001 Memo evidences the oral modification of the Employment Agreement. After the December 20th letter, the parties entered into negotiations, finally came to terms, and Mr. Sherman put the terms orally modifying their agreement in writing.[23]  Mr. Sherman faxed the February 5, 2001 Memo to Mr. Croft.[24] Mr. Croft then accepted the oral modifications to the Employment Agreement.[25]

Serta claims that the February 5, 2001 Memo is simply one of many proposals that went back and forth between the parties.[26] Despite Mr. Sherman's allegation that the parties exchanged numerous documents during the time that they were negotiating in January and

---

[21]    Ex. E; Ex. H, pp. 94-95; Ex. I, pp. 36-38; Ex. M.
[22]    Memos between Serta and Jeremiah Reardon indicating increase in bonus from 33% to 50%, in accordance with Employment Agreement, as orally modified, attached hereto as Ex. N; Ex. I, pp. 48, 52-54; Ex. E.
[23]    Ex. G, pp. 111-112; 166-185.
[24]    Ex. E; Ex. G, pp. 176-180, 182-185, 203, 263-265.
[25]    Id.
[26]    Ex. H, pp. 64-68.

February of 2001, this is the *only* document regarding the negotiation that exists.[27]  In addition, during discovery, Serta produced two versions - one with a facsimile transmission number evidencing it was sent to Mr. Croft and one without,[28] a fact that directly contradicts Mr. Sherman's testimony that, "there was probably numerous documents between us, and they picked out the one that they thought would be best for them."[29]  Serta's Vice President of Human Resources, Julia Guiney, was in possession of the document.[30]  Finally, Mr. Sherman had notes regarding it which state that it was an offer he made.[31]  The only dispute is whether Mr. Croft accepted the offer made by Mr. Sherman.[32]

If there were other "proposals" in addition to the February 2001 Memo, one would assume that Serta would have produced it to support its claim that the February 2001 Memo was one of "numerous documents" between the parties.  Serta has not produced any such evidence and, with all inferences to be drawn in Mr. Croft's favor, the inference this Court must draw is that the February 5, 2001 Memo evidences the oral modifications to which Mr. Croft and Mr. Sherman agreed.

**B.    The Employment Agreement Satisfies the Statute of Frauds.**

The Statute of Frauds states that, if a contract is unable to be performed within one year from its making, the contract must be in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized. Mass. Gen. Laws. Ann. Ch. 259, § 1 (2004).  A memorandum sufficient to satisfy the Statue of Frauds must contain the terms of the contract agreed upon and must be signed by the party to be charged or by someone authorized to

---

[27]  Id.
[28]  Exs. E and F, both with Serta bates numbers; Ex. G, pp. 176-179.
[29]  Ex. H, p. 66.
[30]  Ex. I, pp. 41-43
[31]  Ex. O; Ex. I, p. 50; Ex. H, pp. 115-117.
[32]  Id., Ex. G, pp. 182-185, 203, 263-265, 274.

sign on his behalf.  Cousbelis v. Alexander, 315 Mass. 729, 730, 54 N.E.2d 47, 48 (1944). It

must contain directly, or by implication, all of the essential terms of the parties' agreement.

Simon v. Simon, 35 Mass. App. Ct. 705, 710, 625 N.E.2d at 564, 567 (1994).

Here, the Employment Agreement, the original and the Agreement as orally modified,

satisfies the Statute of Frauds as it contains the agreed to terms and is signed by both parties.[33] It

identifies the parties, Serta and Mr. Croft;[34] it is signed by both parties;[35] and it contains all of the

essential terms of the parties' agreement. For example, it contains Mr. Croft's duties and

responsibilities,[36] salary,[37] Mr. Croft's bonus,[38] the method for reimbursing Mr. Croft's

expenses,[39] the term of the contract,[40] the manner in which Mr. Croft's employment may be

terminated and the compensation he was to receive in that event,[41] and it contained a non-

competition provision.[42] A genuine issue of fact exists as to whether the Employment Agreement

is sufficient to satisfy the Statue of Frauds and, therefore, Serta's *Motion for Summary Judgment*

must be denied.

> **C.    The Oral Modification of the Employment Agreement, as Documented by the February 5, 2001 Memo, Does Not Negate the Employment Agreement's Satisfaction of the Statute of Frauds.**

Mr. Croft seeks to enforce his Employment Agreement as orally modified. The oral

modification, evidenced by the February 5, 2001 Memo, substitutes certain terms of the contract,

but does not replace or re-write it.

---

[33]    Ex. A; Ex. E.
[34]    Ex. A, p. 1.
[35]    Ex. A, p. 4.
[36]    Ex. A, ¶ 1
[37]    Ex. A, ¶ 2; Ex. E, line 2.
[38]    Ex. A, ¶ 3; Ex. E, lines 3-7.
[39]    Ex. A, ¶ 5.
[40]    Ex. A, ¶ 1; Ex. E, line 1.
[41]    Ex. A, ¶¶ 6-12; Ex. E, lines 8-12.
[42]    Ex. A, ¶ 14; Ex. E, lines 11-12.

1.    *The Agreement, as Orally Modified, Is Properly the Basis for Mr. Croft's Claim.*

Mr. Croft seeks to enforce the provisions of his Employment Contract as orally modified. Serta's statement of law regarding the *Cummings Rule* and its progeny is not so much erroneous as it is out-dated and incomplete.  Serta fails to recognize the evolution of the *Cummings Rule* from *Cummings* to *Stearns* to *Johnson*, and the resulting *McKinley* which logically disavowed the false distinction between plaintiff's and defendant's ability to enforce oral modifications.

The *Cummings Rule* and its progeny have come to be accepted as a rule under which a defendant to an action on a written contract to which the Statute of Frauds applies may prove that the time for performance was, upon good consideration and before any breach of the written contract, altered by oral agreement.  See Lydon v. Nationwide Mutual Ins. Co., et al, 1997 U.S. Dist. LEXIS 7070, *26 (D. Mass. 1997) attached to *Defendant's Memo Appendix*; Cummings v. Arnold, 44 Mass. 486 (1842).

In Stearns v. Hall, the defendant agreed to orally modify the time for payment and then refused to receive the money at the new time and maintained as its defense that the Statute of Frauds required enforcement of the original terms for payment as set forth in the written contract. 9 Cush. 31, 63 Mass. 31 (1851).  The court allowed the plaintiff to prove the satisfaction of the oral substitution for the time of performance. Id. While this is seen as a defensive use of the oral modification, it serves as the genesis for a plaintiff, as well as defendants, being able to enforce oral modifications to written contracts.  For, if the plaintiff were not able to use the oral modification to defeat the defendant's defense, the plaintiff would not have prevailed.

Johnston then recognized that terms other than time for performance may be altered by oral agreements. Johnston v. Holiday Inns, Inc., 565 F.2d 790, 796 (1st Cir. 1977). Where the previous cases had only allowed parties to assert that they had not breached the contract because

they still had time to perform, <u>Johnston</u> extended the enforceability of oral modifications to contracts to other terms, as well, as long as the oral modifications did not completely re-write the contract. <u>Id.</u>

Once any term could be modified, not just the defendant's time for performance, it was illogical and unfair to allow only defendants to avail themselves of the orally modified terms to which the parties agreed. In <u>McKinley</u>, the court rectified the inequity present in the "rule" that the defendant could enforce the oral modification as a defense and a plaintiff could enforce the oral modification as a defense to the defense, but a plaintiff could not enforce the oral modification's terms themselves. <u>McKinley Invs., Inc. v. Middleborough Land, L.L.C.</u>, 62 Mass. App. Ct. 616, 818 N.E.2d 627, (2004).

In <u>McKinley</u>, the plaintiff had a written contract to purchase and develop a parcel of land under Massachusetts General Law c. 40B. <u>Id.</u> During the permitting process, *plaintiff* missed a deadline for payment of a deposit, and the parties negotiated an extension of time for *plaintiff's* performance and payment for same. 62 Mass. App. Ct. at 618, 818 N.E.2d at 628-629 (emphasis added). These amendments, effecting extensions of time, elimination of a tolling period, and additions to the contract price, were oral and never reduced to writing. <u>Id.</u> These changes affected substantive aspects of the contract and represented material changes to it. 62 Mass. App. Ct. at 619, 818 N.E.2d at 629. *And, the plaintiff, McKinley, was able to sue on them.* 62 Mass. App. Ct. at 620-621, 818 N.E.2d at 629-630.

The only analysis the court required in determining whether the contract, as orally modified, could be enforced was whether the modifications to the contract were so extensive and significant that a new contract was created, or whether the modifications simply substitute terms.

Id. As the modifications in McKinley simply substituted terms of the contract, the plaintiff was allowed to sue on the contract, as orally modified.[43] Id. So should Mr. Croft.

Serta tortuously tries to distinguish McKinley from Mr. Croft's situation by creating a false distinction between the oral modifications in McKinley effecting a Plaintiff's obligations and Mr. Croft's oral modifications effecting the Defendant's obligations. *Defendant's Memo*, p. 11-12. This is an irrational and false distinction. By allowing the oral modification, the McKinley court ruled the contract was still in effect and *both* parties remained obligated. When McKinley was allowed to enforce the oral modifications, defendant's obligations to plaintiff continued. The same situation arises here. By allowing Mr. Croft to enforce the oral modifications, the Court will bind Serta to the contract. There is no distinction between the instant situation and McKinley. The oral modifications are enforceable and summary judgment is not warranted.

> **2.    *The Oral Modifications Evidenced by the February 5, 2001 Memo Simply Substituted Terms and Did Not Re-Write the Employment Contract.***

A written contract may be subsequently altered by oral modification. Costonis v. Medford Housing Authority, 343 Mass. 108, 113, 176 N.E.2d 25, 28 (1961). An oral modification may enlarge the time for performance or may vary any other term. Id., McKinley Invs., Inc, 62 Mass. App. Ct. at 620, 818 N.E.2d at 630.

If a modification to a contract becomes so extensive and significant that a new contract is created, the new contract must also be proved by a writing and satisfy the Statute of Frauds. Id. citing Johnston, 565 F.2d at 796. However, if an oral modification simply substitutes terms and not the entire contract, the oral modification does not have to be in writing to be enforceable. McKinley Invs., 62 Mass. App. Ct. at 620-621, 818 N.E.2d at 630.

---

[43]    *Defendant's Memo*, p. 11-12.

J:\Docs\24315\00001\00957919.DOC                    11

The test for whether an agreement is simply modified or replaced altogether is whether the oral modification replaces every important term of the original written agreement, such that the written agreement and the oral agreement are completely different. Johnston, 565 F.2d at 795 (1st Cir. 1977) discussing Rosenfeld v. Standard Bottling & Extracts Co., 232 Mass. 239, 244-245, 122 N.E. 299 (1919). If the modification becomes so extensive and significant that it becomes a new contract, the original contract has been replaced by the oral agreement. McKinley Invs., 62 Mass. App. Ct. at 619, 818 N.E.2d at 629, quoting Johnston, 565 F.2d at 796.

In McKinley, the oral modifications plaintiff enforced included extensions of time, elimination of a tolling period, and additions to the contract price. 62 Mass. App. Ct. at 618-619, 818 N.E.2d at 629. These modifications did not rewrite the contract. Id. Rather, they established substitute performance, not a substitute contract, and, despite being oral modifications to a written contract, were enforced. Id.

In Rosenfeld, the plaintiff sought to enforce oral changes to a contract which allowed a traveling salesman to cease traveling. 232 Mass. 239, 244-245, 122 N.E. at 299-300. This change was held to have substituted a new agreement for the old because the modified agreement had "nothing in common" with the original agreement and the plaintiff's obligations were "utterly different." Id. As the new agreement was not in writing, it failed to satisfy the Statute of Frauds. Id.

In Kirkley v. F. H. Roberts Co., a written agreement between the parties made the plaintiff an exclusive sales agent for defendant. Defendant tried to avoid the contract, alleging in part that subsequent dealings between the parties had modified the original contract to such an extent that it had ceased to exist. 268 Mass. 246, 252-253, 167 N.E. 289, 290 (1929). Though the court did not directly discuss the Statute of Frauds, it did distinguish Rosenfeld on the basis that,

though later dealings did modify significant terms such as the exclusive territory, commission, and method of making sales, *"the relations of the parties, in the main, were those laid down in the written contract. It could still be looked to for the determination of their respective rights. The judge could not rule, as a matter of law, that such modifications as could be found to exist were so material and so extensive that the original contract had disappeared."* Id. (emphasis added).

In Johnston, a reduction of a guarantee period by *16 years* was very significant and changed one "essential feature" of the agreement. 565 F.2d at 796 (emphasis added). But, it did not replace the original contract as the court determined that the original contract still, "in the main, determined the relations and the respective rights of the parties." Id. The modifications constituted substitute performance, rather than a substitute contract, and, therefore, as the original contract satisfied the Statute of Frauds, so it did with the oral modifications. The Statue of Frauds did not preclude the finder of fact from considering the alleged change in the contract term. Id.

In the present case, the oral agreement extended the time for performance by three years, addressed salary and bonus increases, and modified Mr. Croft's severance and non-competition agreement if he voluntarily left his job.[44]  His title, position, duties and responsibilities remained the same.[45]  In fact, the February 5, 2001 Memo referred directly to terms in the Employment Agreement "remain[ing] in effect."[46]

The oral modifications did not replace the original contract.  Mr. Croft's relationship and position with Serta remained the same. The Employment Agreement was orally modified, as evidenced by the February 5, 2001 Memo. The original contract still, "in the main," determined

---

[44]    Ex. A; Ex. E.
[45]    Ex. A, p. 1; Ex. E.

the relations and the respective rights of the parties. As the Employment Agreement satisfies the Statute of Frauds, so it does as orally modified. There is no more compelling evidence that the February 5, 2001 Memo modified, but did not replace, the Employment Contract than the reference to the Employment Contract, and the incorporation of its terms, in the February 5, 2001 Memo.[47] Serta is legally bound by its contract, and the oral modification thereto, with Mr. Croft. Granting Serta summary judgment on the contract would be in error.

### D.    Serta is Estopped from Raising the Statue of Frauds Defense.

Where a party against whom enforcement of an oral contract is sought has made a material misrepresentation, that party may be estopped from raising the Statute of Frauds defense. Greenstein v. Flatley, 19 Mass. App. Ct. 351, 356 (1985). The only element that is necessary to establish estoppel that Serta maintains Mr. Croft would not be able to show is that Mr. Croft detrimentally relied on Serta's acts.[48]

Mr. Croft detrimentally relied[49] on what he believed was Serta's commitment to extending the contract terms through December 2004, and the other terms orally modified by the parties. First, Mr. Croft remained employed with Serta when he expressly stated to them that he would not do so unless the contract term was extended.[50] He was then terminated on September

---

[46]    Ex. E.
[47]    The February 5, 2001 Memo, Ex. E, also states, "If employee quits – No non-compete, No severance. If terminated - Contract dates remain in effect regarding salaries and non-competes," referring back to the Employment Agreement which contains the details of the non-competition agreement and severance provisions. Ex. E, see also Ex. A.
[48]    Defendant's Memo, pp. 12-15.
[49]    This detrimental reliance also supports Mr. Croft's claim for Promissory Estoppel, on which Serta moves for summary judgment based solely on the argument that Mr. Croft did not suffer any damages. See Defendant's Memo, p. 19. Mr. Croft objects to Serta's citation to Beriont v. GTE Labs., Inc., 60 Mass. App. Ct. 1108, 800 N.E.2d, 726, WL 22992122 (Mass. App. Ct. 2003) and Barletta v. Odgen Martin Sys., 51 Mass. App. Ct. 1101, 751 N.E.2d 934, 2001 WL 128582 (Mass. App. Ct. 2001) as these are unpublished decisions issued pursuant to Rule 1:28 of the Massachusetts Rules of Appellate Procedure and, as such, are not to be cited and have no precedential value.
[50]    Ex. G, p. 280.

19, 2001, and paid through the remainder of the September.[51]  On October 2, 2001, Mr. Croft

began receiving his salary continuation pursuant to the non-competition agreement contained in

the Employment Contract as orally modified.[52]  Second, he changed industries in order to ensure

that he did not breach the contract, a contract he believed would pay him through December

2004.[53]  The contract, as orally modified, contained a non-competition clause, a clause with

which Serta complied.[54]  This clause paid Mr. Croft his salary for two years in exchange for a

one-year non-competition agreement.[55]  During the one-year of non-competition, Mr. Croft left

the mattress industry and started his own business, believing that he would be receiving his

salary from Serta through December 2004.[56]  It was not until the two-year payout for the non-

competition clause was complete that Serta failed to pay Mr. Croft for the remainder of the

contract term, through December 2004.[57]  By this time, Mr. Croft had been out of the mattress

business, and developing his own company, for two full years.[58]  Mr. Croft detrimentally relied

upon Serta's commitment to him as made in the Employment Contract, as orally modified.  Serta

should be estopped from raising the Statute of Frauds defense.

---

[51]  Ex. D.
[52]  Ex. G, pp. 258-260; Ex. A; Ex. E.
[53]  Ex. G, pp. 274-289.
[54]  Ex. A, Attachment A; Ex. E; Ex. G, pp. 258-260.
[55]  Id.
[56]  Ex. G, pp. 274-289.
[57]  *Defendant's Response to Plaintiff's First Set of Interrogatories*, attached hereto as Ex. J, Answers 1, 13, 16.
[58]  Id.

III.    **SERTA, NOT MR. CROFT, BREACHED THE POST-TERMINATION SALARY AND BONUS PROVISIONS OUTLINED IN THE EMPLOYMENT AGREEMENT.**

As Mr. Croft properly came into possession of company documents, innocently kept them, and did not subsequently use them until this litigation,[59] he is not responsible for any material breach of the Employment Agreement, as orally modified. Therefore, Serta owes him his salary, benefits and bonus for the entirety of the New Designated Term, which it has not paid.[60] Serta, not Mr Croft, has breached the Employment Agreement, as orally modified.

A.    **The Return of Company Documents is not an Enforceable Condition Precedent to Serta's Performance.**

If the performance of one party is conditioned on a stipulation of the other party, performance may be subject to a "condition precedent." Malden Knitting Mills v. U.S. Rubber Co., 301 Mass. 229 (1938); Wood v. Roy Lapidus, Inc., 10 Mass. App. Ct. 761, 763 (1980). If a condition precedent is found to exist, and it is not performed, then the contract will not impose a binding obligation of performance on the other party. Tilo Roofing Co. v. Pellerin, 331 Mass. 743, 746 (1954).

The question of whether there is, in fact, such a condition depends on the intent of the parties. Tilo Roofing Co., 331 Mass. at 746; Schwoerer v. Boylston Market Ass'n, 99 Mass. 285 (1868). The court shall look to the whole language of the contract and the nature of the act required to determine if a condition precedent exists. Id. Even if the court finds that a condition precedent exists, the condition may be excused if the other party waives the condition and if the condition is not a material part of the agreement. Restatement (Second) of Contracts § 84 (1).

---

[59]    Ex. G, pp. 17-23; " …[W]hen documents have been innocently acquired, and not subsequently misused, there has not been the kind of employee misconduct that would justify withdrawing otherwise appropriate protection granted under anti-discrimination statutes. Kempcke v. Monsanto Co., 132 F.3d 442, 447 (8th Cir. 1997).
[60]    Ex. J, Answers 1, 13, 16.

In the present case, the intent of the condition precedent was accomplished elsewhere in the Employment Contract, Serta waived the condition it had attempted to impose, and the condition was not a material part of the contract. Therefore, Mr. Croft's failure to return company documents does not assist Serta in avoiding its obligations to him.

It is necessary to read the agreement as a whole and examine the negotiations between the parties to determine if the return of the documents was intended to be a condition precedent. In requesting the return of company property as defined in Exhibit A(b) of the Employment Agreement, Serta sought to prevent Mr. Croft from using those materials in direct competition with Serta. However, that goal was more directly addressed in paragraph 6 of the Agreement, which provided that Serta would pay Mr. Croft two-years salary in exchange for a one year non-competition agreement. Mr. Croft testified that there was "no way" he was going to violate the non-competition agreement[61] and he left the mattress industry rather than running the risk of doing so.[62] Nor did Mr. Croft ever use the documents.[63] The goal of the condition precedent, not allowing any competitors to use company information against Serta, was accomplished.

In addition, the condition precedent was not material to the contract and Serta waived its right to assert the condition precedent. First, Serta was not surprised to learn that employees took company documents home.[64] Second, despite acknowledging that employees were free to take company documents home, Serta does not have a company policy regarding how documents are handled,[65] has never made a demand of a former employee for the return of documents,[66] has never sued an employee for failure to return company documents,[67] never asked Mr. Croft to

---

[61] Ex. G, p. 287.
[62] Ex. G, pp. 274-289.
[63] Ex. G, pp. 17-23.
[64] Ex. H, p. 15.
[65] Ex. H, p. 14.
[66] Ex. H, p. 15.
[67] Id.

return documents after terminating him,[68] and has never instructed any employee not to take company documents home.[69]  Most importantly, Mr. Croft's retention of documents has not harmed Serta in any way.[70]

As Mr. Croft innocently obtained and never used the documents, Serta never took any steps to ensure compliance with the condition precedent, and the purpose of the condition precedent was accomplished despite Serta's lackadaisical conduct toward it's documents, the mere existence of "condition precedent" language in the Employment Agreement should not be used to defeat Mr. Croft's claims.

**B.    The Ambiguity in the Contract and the February 5, 2001 Memo Create a New Designated Term During Which Serta was Obligated to Pay Mr. Croft.**

Serta argues that it was only obligated to pay Mr. Croft his continued salary during the "Designated Term," which expired on June 21, 2001.[71]  In fact, Serta's salary continuation obligation ran through December 31, 2004, the new Designated Term.

First, far from being unambiguous as Serta suggests, the Employment Agreement uses "Designated Term" and "Term" interchangeably which creates confusion and ambiguity.  For example, paragraphs 1-5 of the Employment Agreement lay out contractual terms that applied during both the Designated Term and the Term, although the paragraphs only state that they apply "During the *Term*."[72]  Those paragraphs outline his salary, benefits, title, duties and responsibilities.[73]  Paragraphs 7 and 8 of the Employment Agreement lay out contractual terms as applying "During the *Term*," and logically apply during both the Designated Term *and* the

---

[68]    Id.
[69]    Id.
[70]    Ex. H, p. 139.
[71]    *Defendant's Memo*, p. 16.
[72]    Ex. A, ¶¶ 1-5 (emphasis added).
[73]    Id.

Term.[74]   The distinction between the two phrases, upon which Serta relies to cut off it's liability for continued salary, is ambiguous and, therefore, the contract should be read in Mr. Croft's favor.  See American Airlines v. Wolens, 513 U.S. 219, 248, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995).

Second, Mr. Croft wanted three issues in his Employment Contract modified, one of which was eliminating the one-year renewal periods.[75] Mr. Croft would not have continued working under the Employment Agreement unless that provision, along with the other two, were addressed.[76]

Third, the Employment Agreement distinguishes between the Designated Term, a two-year term commencing on the date of the contract and expiring on June 22, 2001, and Terms, which are defined as subsequent one-year renewal periods.[77]  The February 2001 Memo extended the "contract length" for three-plus years, commencing on the date of the oral modification, and expiring on December 31, 2004.[78]  By definition, this "contract length" is not a one-year extension, or Term. Rather, this extended "contract length," for a defined period of time far exceeding a "subsequent one-year renewal period," created a New Designated Term.

Pursuant to Paragraph 10 of the Employment Contract, as orally modified, Serta is obligated to pay Croft, through the term of the contract, continued salary and bonuses in the event he is terminated without cause during the Designated Term.[79] The Employment Agreement, as orally modified, extended the Designated Term through December 31, 2004.[80] Serta's termination of Croft without cause on September 19, 2001, fell within the New

---

[74]    Ex. A, ¶¶ 7 and 8. These provisions never took effect.
[75]    Ex. G, pp. 121, 139-151; Ex. I, pp. 26, 33.
[76]    Ex. G, p. 280.
[77]    Ex. A, ¶ 1.
[78]    Ex. E.
[79]    Ex. A; Ex. E.
[80]    Ex. E.

Designated Term and therefore triggered the salary and bonus obligations outlined in paragraph 10 of the Employment Agreement.

Serta argues that if it is required to continue Mr. Croft's salary pursuant to paragraph 10 in the Employment Agreement as orally modified, it is only required to pay "accrued and unpaid bonus, if any, vested."[81] Serta goes on to assert that Mr. Croft had not accrued or vested in any bonus.[82] This issue is contested as Mr. Croft's sales team members received their full bonus in 2001[83] and Serta presents no evidence regarding the accruing or vesting of bonuses.

Serta failed to pay Mr. Croft his annual salary for the remainder of the contract length, or his benefits and bonus, and therefore breached the Employment Contract as orally modified.[84] Serta owes Mr. Croft his salary, benefits and bonus through December 31, 2004.

## CONCLUSION

WHEREFORE, Mr. Croft respectfully requests this Court deny Serta's *Motion for Summary Judgment*.

Respectfully submitted,
PLAINTIFF PAUL R. CROFT,
By his Attorneys,

Laura R. Studen, BBO # 483690
Nancy A. Newark, BBO #635320
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA  02110
(617) 345-3000

Date: _____ , 2005

---

[81] *Defendant's Memo*, p. 17.
[82] Id.
[83] Ex. N.
[84] Ex. J, Answers 1, 13, 16.

## CERTIFICATE OF SERVICE

I, Nancy A. Newark, hereby certify that on this ___4___ day of October, 2005, a true copy of the foregoing document was posted (via hand delivery / ~~regular mail~~, postage pre-paid, to Daniel Klein, Seyfarth Shaw, counsel of record for Defendant.

Nancy A. Newark